IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CATHERINE ANN WHITE          )
                             )
v.                           )          No. 3:22-cv-0764
                             )
KILOLO KIJAKAZI              )
Commissioner, Social Security )
Administration               )


**To:     The Honorable Aleta A. Trauger, United States District Judge**


## REPORT AND RECOMMENDATION

Plaintiff Catherine Anne White filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 14), to which Defendant SSA has responded (Docket No. 18). Plaintiff has also filed a reply to the SSA's response. (Docket No. 19.) This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 14) be GRANTED, the SSA's decision be REVERSED, and this matter be REMANDED for further proceedings.

# I.    INTRODUCTION

On January 11, 2020, Plaintiff protectively filed an application for disability benefits, in which she asserted that, as of the alleged onset date of March 23, 2016,[1] she was disabled and unable to work due to traumatic brain injury, post-concussion syndrome, depression, and panic disorder. (Transcript of the Administrative Record (Docket No. 11) at 185, 328.)[2] The application was denied initially on April 28, 2020 and upon reconsideration on January 4, 2021. (AR 23.) On June 22, 2021, Plaintiff appeared with counsel and testified at an online video hearing conducted by ALJ Frank L. Gregori. (AR 43–87.) On August 2, 2021, the ALJ denied the claim. (AR 20–22.) On August 9, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 1–4.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

# II.    THE ALJ FINDINGS

The ALJ issued an unfavorable decision on August 2, 2021 and included the following enumerated findings:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

---

[1] Plaintiff's counsel stated during an online video hearing conduct by the ALJ that the onset date was amended to February 1, 2019. (Transcript of the Administrative Record (Docket No. 11) at 48.)

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2.	The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of February 1, 2019 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.*).

3.	Through the date last insured, the claimant had the following severe impairments: depressive disorder, generalized anxiety disorder, attention-deficit hyperactivity disorder (ADHD) and status-post concussion (20 CFR 404.1520(c)).

4.	Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.	After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following mental limitations: she can understand, remember, carry out, and maintain adequate concentration, persistence, and pace on only simple, repetitive, and one-to-two step tasks throughout an 8-hourworkday with customary work breaks. She can have only occasionally interactions with the general-public, and she can adapt to only infrequent changes that are gradually introduced into the work environment.

6.	Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.	The claimant was born on May 26, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.	The claimant has at least a high school education (20 CFR 404.1564).

9.	Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.	Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.	The claimant was not under a disability, as defined in the Social Security Act, at any time from March 23, 2016, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(AR 25–37.)

3

## III.     REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV.     DISCUSSION AND CONCLUSIONS OF LAW

### A.     Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed

4

further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs*., 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984).

**B.     The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps – (1) she had not engaged in substantial gainful activity, and (2) her impairments of depressive disorder, generalized anxiety disorder, attention-

deficit hyperactivity disorder (ADHD), and status-post concussion were severe[3] – but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25–28.) At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with certain mental limitations. (AR 28–35.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from March 23, 2016, the original alleged onset date, through December 31, 2019, the date last insured ("DLI"). (AR 37.)

## C.     Plaintiff's Assertions of Error

Plaintiff sets forth two assertions of error: (1) the ALJ failed to properly consider and explain the weight given to opinion evidence in the record from Plaintiff's treating psychiatrist, Dr. Andrew Pierce; and (2) the ALJ failed to properly assess the statement of Plaintiff and others about Plaintiff's limitations and how those limitations impact her functioning. (Docket No. 15 at 13.)

Plaintiff requests that this case be remanded for further consideration under either sentence four or sentence six of 42 U.S.C. § 405(g). The Supreme Court of the United States described these two types of statutory remand:

> Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the [SSA's] decision. Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the [SSA's] decision, but only if the claimant shows good cause for failing to present the evidence earlier.

---

[3] The ALJ found that Plaintiff's headache and fatigue did not cause more than minimal limitation to Plaintiff's ability to perform basic work activities and, accordingly, were non-severe impairments. (AR 26.)

6

*Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991) (citing 42 U.S.C. § 405(g)). "Sentence six remands may be ordered in only two situations: where the [SSA] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted).

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

### 1. The ALJ's Consideration of Medical Opinion Evidence.

For her first assertion of error, Plaintiff argues that the ALJ improperly considered and explained the weight afforded to opinion evidence from Plaintiff's treating psychiatrist, Dr. Andrew Pierce, when determining Plaintiff's RFC. (Docket No. 15 at 14–19.) Specifically, Plaintiff alleges that the ALJ failed to adequately discuss the supportability and consistency of Dr. Pierce's opinion as required under the regulations at 20 C.F.R. § 404.1520c. (*Id.*)

As a preliminary matter, RFC is an assessment of "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations describe five different

7

categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. *Id.* § 404.1513(a)(1)–(5). At issue here is "medical opinion" evidence, which is defined as "a statement from a medical source about what you can still do despite your impairment(s)" and "whether you have one or more impairment-related limitations or restrictions" in four categories of abilities. *Id.* § 404.1513(a)(2). Those four categories include the ability to perform physical work activities, mental work activities, and other demands of work activities, and to adapt to environmental conditions. *Id.* § 404.1513(a)(2)(i)–(iv).

When evaluating medical opinions, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).[4]

Supportability and consistency are the "most important factors" in this analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support

---

[4] This regulation changed the articulation required by ALJs when considering medical opinions. The prior regulations were interpreted to set forth a general hierarchy of medical source opinions. 20 C.F.R. § 404.1527. Although the new regulations have eliminated this hierarchy, an ALJ must still "'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

8

those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1).[5] In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two most important factors – supportability and consistency – must be explained, while the other factors may be explained. *Id.* § 404.1520c(b)(2).

To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)). However, because of the "newness" of these regulations, there is a "dearth of caselaw concerning what constitutes a 'sufficient' explanation of supportability and consistency." *Terhune v. Kijakazi*, No. CV 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citing

---

[5] Some district courts in the Sixth Circuit have described the supportability factor as "concern[ing] an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-cv-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96–2p, 1996 LEXIS 9 (July 2, 1996)). *See also Laura M. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2764, 2023 WL 2422454, at *4 (S.D. Ohio Mar. 9, 2023) (citing *Reusel*, 2021 WL 1697919 at *7 n.6). This description, however, comes from Social Security Regulation ("SSR") 96–2p, which was promulgated in 1996 and rescinded effective March 27, 2017. *See* 82 Fed. R. 57, 15263 (Mar. 27, 2017). The Federal Register in which this regulation was rescinded states:

> SSR 96–2p explained how adjudicators should evaluate medical opinions from treating sources, including when it is appropriate to give controlling weight to medical opinions from treating sources. The final rules revised these policies for claims filed on or after March 27, 2017, in several ways. For example, adjudicators will not assign a weight, including controlling weight, to any medical opinion for claims filed on or after March 27, 2017. Therefore, this SSR is inconsistent with the final rules.

*Id.* Accordingly, the undersigned has not relied on the description of supportability in SSR 96–2p when analyzing the ALJ's articulation of the supportability factor.

Case 3:22-cv-00764   Document 20   Filed 05/12/23   Page 9 of 22 PageID #: 1109

*Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620 (S.D. Miss. Sep. 15, 2021)). Nevertheless, these regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The explanation does not need to be lengthy, but "the ALJ must do more than pay lip service to the regulation without substantively engaging with the supportability and consistency of medical opinions in any detail whatsoever." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021)). *See Vaughn v. Comm'r of Soc. Sec.*, No. 20-CV-1119-TMP, 2021 WL 3056108, at *9 (W.D. Tenn. Jul. 20, 2021) (finding detailed three sentence explanation sufficient to be considered an explanation).

The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). In other words, the question is whether the ALJ's persuasiveness explanation – which includes a discussion of supportability and consistency – enables the court to undertake a "meaningful review" of the ALJ's finding as to whether the medical opinion was supported by substantial evidence. *Terhune*, 2022 WL 2910002 at *3 (citing *Blakley*, 581 F.3d at 409; *Pearson*, 2021 WL 3708047 at *5). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine whether the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn*, 2021 WL 3056108 at *11). Several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, 378 F.3d 541, which applies to violations of the treating physician

10

rule, should also apply to an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion. *See Lorraine R. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4232839, at *4–5 (S.D. Ohio Sept. 14, 2022); *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (citing cases). The application of the *Wilson* harmless error test to an ALJ's violation of 20 C.F.R. § 404.1520c(b)(2) has been summarized as follows:

> Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id.* at 546.

*Lorraine R.*, 2022 WL 4232839 at *5.

Here, the ALJ found that Dr. Pierce's July 23, 2020 medical opinion was not persuasive. (AR 34.) This opinion is, in essence, a questionnaire that Dr. Pierce filled out which is titled, "Medical Opinion Re: Ability To Do Work-Related Activities (Mental)." The opinion includes three substantive pages. (AR 852–54.) The first page consists of a checklist that Dr. Pierce completed of Plaintiff's "mental abilities and aptitudes needed to do unskilled work." Dr. Pierce opined that Plaintiff has "no useful ability to function" in five of the sixteen categories – maintaining regular attendance, working in coordination with others, completing a normal workday and workweek without interruption, performing at a consistent pace without an unreasonable number of breaks, and dealing with normal work stress. (AR 852.) He included an explanation of the limitations that fell in the three most limited categories:

> Patient has severe deficits related to brain injury and psychiatric condition including memory, concentration, executive function and capacity for work. Patient's deficits have failed to ameliorate with accommodation including increase supervision.

11

(AR 852.) The second page consists of two shorter checklists of Plaintiff's "mental abilities and aptitudes to do semiskilled work and skilled work" and "mental abilities and aptitudes needed to do particular types of jobs." (AR 853.) Dr. Pierce opined that Plaintiff had "no useful ability to function" in three of the four categories listed in the former checklist – understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with stress of work – but opined that she had much higher abilities in the five categories in the latter checklist. (AR 853.) This page also included Dr. Pierce's explanations of the limitations that fell in the three most limited categories: "Patient is unable to recall and execute detailed instructions or tolerate typical stress. . . . Patient has detailed excessive stress and associated confusion attempting to navigate independently." (AR 853.) On the final page, Dr. Pierce stated that Plaintiff would have difficulty working a regular job on a sustained basis because she "requires significant time to recover after social or occupational engagement"; that her impairments would keep her from work for "more than four days per month"; that she would be off task for 80% or more of the workday due to her mental impairments; that she can manage benefits in her own best interest; that her limitations have existed since at least December 31, 2019; and that she has "made substantial effort to maintain employment but has been unsuccessful due to disability." (AR 854.)

In his decision, to support his finding that Dr. Pierce's medical opinion was not persuasive, the ALJ stated:

> Dr. Pierce opined that the claimant has no "useful ability to function" in maintaining regular attendance or being punctual within customary, usually strict tolerances; nor work in coordination with or proximity without being unduly distracted. He further opined that the claimant has no "useful ability to function" in completing a normal workday and workweek without interruptions from psychologically based symptoms in addition to other extreme limitations. Although he indicated that the functional limitations opined have been present since December 31, 2019, such is inconsistent with the treatment evidence during the relevant period at issue; particularly his own treatment of the claimant, as mental

12

status examination were more often than not unremarkable. (Exhibit 4F/4, 10-11, 12-13). Examinations performed by him on January 6 and May 26, 2020 were unremarkable, but for the claimant describing her mood as "in a battle". Specifically on May 26, 2020, she was alerted and oriented; her speech was appropriate, she was calm and cooperative, her long and short-term memory were both intact. She denied suicidal and homicidal ideation and displayed good insight and judgment as shown in evidence during the adjudicative period as documented above, as well as evidence thereafter. (Exhibits 8F/3, 9, 17F/2). Moreover, the detailed emails the claimant sent to her attorney and psychologist show that the claimant may be far more attentive and cerebral that she has alleged. (Exhibits 16E, 17F, 23F, 24F).

(AR 34.) The ALJ also referenced medical records from Plaintiff's visits with Dr. Pierce on February 21, 2019; June 3, 2019; July 1, 2019; September 3, 2019; November 4, 2019; and January 6, 2020. (AR 30–31.)

First, with respect to consistency, the ALJ compared Dr. Pierce's opinion to treatment notes, including Dr. Pierce's own records from February 2019, June 2019, November 2019, January 2020, and May 2020 (AR 661–62, 667–70, 815–16, 821–22) and a treatment note from Dr. Sravani Mehta at BrainCare Nashville Franklin from April 2021 (AR 961–63). (AR 34.) The ALJ wrote that Dr. Pierce's opinion was "inconsistent with the treatment evidence during the relevant period at issue," which included unremarkable mental examinations where Plaintiff was reported to be alert, oriented, calm, and cooperative and to have appropriate speech. (*Id.*) As the ALJ stated, these treatment notes described Plaintiff's short-term and long-term memory as "intact" and her insight and judgment as "good." (*Id.* (citing AR 816, 822).) The ALJ also compared Dr. Pierce's July 2020 opinion to emails sent by Plaintiff in June and July 2021 in which she commented on and offered corrections to the April 2021 treatment note from Dr. Mehta and the July 2021 neuropsychological assessment performed by Dr. Yasmeen Neal (AR 449, 963, 1010–11). The ALJ found these "detailed" emails to show that Plaintiff was "far more attentive and cerebral" than she alleged.

13

Plaintiff asserts that the ALJ failed to adequately consider the consistency of Dr. Pierce's opinion because the ALJ did not discuss the opinion in comparison to "other medical evidence of record," and, in particular, to Dr. Neal's July 2021 neuropsychological assessment. (Docket No. 15 at 15.) While it may be true that the ALJ did not directly compare Dr. Pierce's opinion to Dr. Neal's neuropsychological assessment, the ALJ is "not required to address every piece of evidence." *Collier v. Comm'r of Soc. Sec. Admin.*, No. 3:16–cv–02077, 2018 WL 2193965, at * 2 (M.D. Tenn. May 14, 2018) (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). However, the ALJ must "provide a 'logical bridge' between the evidence and his conclusions." *Id.* The Court believes that the ALJ met its burden to provide that "logical bridge" to his conclusion that Dr. Pierce's opinion was not consistent with other medical evidence. As detailed above, the evidence that the ALJ considered included treatment notes from Dr. Pierce and Dr. Mehta, and emails that included Plaintiff's commentary on certain medical records, including Dr. Neal's psychological assessment. The ALJ found that Dr. Pierce's assessment that Plaintiff has "no useful ability to function" in maintaining attendance, being punctual, completing a normal workday, and more was not commensurate with these other pieces of evidence. Accordingly, the ALJ did, indeed, compare Dr. Pierce's opinion to other evidence in the record to determine that it was not consistent.

While the ALJ discussed the consistency of Dr. Pierce's opinion, the ALJ made no effort to discuss the opinion's supportability. The ALJ did not provide the Court with an analysis of how well Dr. Pierce supported and explained his opinion, so the Court is left to wonder how the ALJ reached the conclusion that the opinion was not supportable. *See Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021WL 2535580, at *7–8 (N.D. Ohio June 3, 2021) (finding that the "ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion"

14

where no discussion of supportability was). The ALJ offered a summary of the opinion, but did not mention the supportability factor at all,[6] let alone provide an analysis of whether he found the opinion to be supportable. "Simply detailing the findings of an opinion without providing any analysis or rationale or even mentioning the supportability factor prevents the Court from finding that the ALJ's analysis of Dr. [Pierce's] opinion is supported by substantial evidence." *Fancher v. Kijakazi*, No. 2:20-CV-198-TRM-JEM, 2022 WL 824024, at *12 (E.D. Tenn. Feb. 18, 2022). This error is not harmless because "without fuller explanation, this [C]ourt cannot engage in meaningful review of the ALJ's decision," even if "the ALJ's ultimate conclusion may be supported by substantial evidence." *Id.* (citing *Todd*, 2021WL 2535580 at *7–8; *Blakley*, 581 F.3d at 409).

For these reasons, the Court cannot find that the ALJ appropriately weighed Dr. Pierce's opinion because the ALJ failed to consider the supportability factor as required under the regulations. This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Hardy*, 554 F. Supp. 3d at 906. Accordingly, remand is required.

### 2. The ALJ's Consideration of Plaintiff's Subjective Complaints.

For her second assertion of error, Plaintiff argues that the ALJ improperly considered the statements that Plaintiff and others made about her limitations and how they impact her functioning. (Docket No. 15 at 20–23.) When a claimant alleges the existence of disabling

---

[6] The SSA argues that the ALJ was not required to use the words "supportability" or "support." (Docket No. 18 at 8 (citing *Gregory R. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1817, 2022 WL 780240, at *6–8 (S.D. Ohio Mar. 15, 2022)).) While the Court agrees that the ALJ may articulate supportability and consistency factors without using those precise words, the Court nevertheless finds that the ALJ failed to discuss the supportability of Dr. Pierce's opinion.

symptoms,[7] the ALJ is required to evaluate the symptoms using a two-step process formulated by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986), which was later incorporated into Social Security Regulation ("SSR") 16–3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. SSR 16–3p, 2017 WL 5180304 at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important.[8] If an individual's statements are *consistent* with the

---

[7] A "symptom" is defined as an individual's own description or statement of her impairment. SSR 16–3p, 2017 WL 5180304, at *2.

[8] The precursor to SSR 16–3p, SSR 96–7p, required the ALJ to make a "credibility" determination based on the claimant's statements regarding the limiting effects of his alleged symptoms. 1996 WL 374186 at *3 (July 2, 1996). Although the Commissioner of the SSA removed any reference to "credibility" in SSR 16–3p, there is no substantive change in the ALJ's analysis, and the case law pertaining to credibility evaluations under SSR 96–7p remains applicable. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting

16

objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if those statements are *inconsistent*, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

---

that SSR 16–3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *see also Young v. Berryhill*, No. 3:17-cv-395, 2018 WL 1914732, at *6 (W.D. Ky. April 23, 2018) ("The analysis under SSR 16–3p otherwise is identical to that performed under SSRI 96–7p."). As noted by a sister district court, reviewing courts have therefore largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

The Court finds that substantial evidence supports the ALJ's credibility determination in this matter. The ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 33.) He stated that "[t]he record as a whole persuades the undersigned that although the claimant has alleged rather marked functional limitations, the actual extent of her functional limitations is significantly less than that which has been alleged." (AR 29.) In making this determination, the ALJ extensively discussed medical records from Stonecrest Medical Center, Summit Medical Center, Clearpath Behavioral Health where Dr. Pierce practices, Murfreesboro Medical Clinic where Plaintiff received a memory screening and was referred for an MRI, and Ho Vision Group. (AR 29–31.) The ALJ detailed visits between March 2016 and January 2020 wherein Plaintiff was described as alert, oriented, normal, and unremarkable, and was noted to be improving or stable, but he did not cherry pick only evidence regarding Plaintiff's symptoms that would be helpful to his RFC determination. For example, the ALJ described a February 2019 visit to Dr. Pierce as follows:

> Patient reported that her depression and anxiety was stable, and that she was tutoring refugees at her church. She did report low energy most days. However, her mental status examination was unremarkable. She was assessed with major depressive disorder, recurrent, moderate; as well as, generalized anxiety disorder. She was continued on Cymbalta 120 mg q daily and Clonzepam [sic] 0.5 mg BID with plans to taper, and follow-up in 2 months.

(AR 30 (emphasis in original).) The ALJ also discussed Plaintiff's own testimony from her hearing, which included discussions of her daily activities, attempts to work following her March 2016 accident, and issues with memory recall (AR 31–32); statements from Plaintiff's mother and sister describing the changes in Plaintiff's behavior following her March 2016 accident (AR 32); and emails sent by Plaintiff in June and July 2021 wherein she commented on and offered

18

corrections to the April 2021 treatment note from Dr. Mehta and the July 2021 neuropsychological assessment performed by Dr. Neal (AR 32).

To support her larger contention that the ALJ discounted her credibility, Plaintiff argues that the ALJ improperly focused on isolated examples of her daily activities, and, in doing so, discounted her statement about her limitations. (Docket No. 15 at 21.) By making this argument, she takes issue with the ALJ's finding that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. When determining that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace, the ALJ referenced Plaintiff's performance of what Plaintiff describes as "basic activities" such as meal preparation, self-care, household chores, occasional driving, and reading. (AR 27.) Plaintiff asserts that these isolated "basic activities" do not support a finding that she could perform work activity on a sustained basis. (Docket No. 15 at 21.)

While the ALJ did consider these "basic activities," he also considered other evidence from the record. This included Plaintiff's treatment notes indicating that she was frequently alert and oriented, a July 2019 neurological consultation that was unremarkable, and a November 2019 treatment note that her cognitive functioning was intact. (AR 27.) Courts in the Sixth Circuit "have long held that '[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (quoting *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (per curiam)) (citing *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, Masters remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely

19

debilitating.")). Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's daily activities.

Plaintiff also argues that the ALJ discounted her credibility by failing to adequately discuss the persuasiveness of the statements from her mother and sister. (Docket No. 15 at 21.) She asserts that he erred when he failed to discuss how the statements were consistent with one another or with Plaintiff's own allegations regarding her limitations. (*Id.*) In his decision, the ALJ found these statements "somewhat persuasive." (AR 33.) However, as the SSA points out, the ALJ was not required to articulate how persuasive he found the two statements, which are nonmedical sources. 20 C.F.R. § 404.1520c(d) ("We [the SSA] are not required to articulate how we considered evidence from nonmedical sources . . . ."); 20 C.F.R. § 404.1520(e) ("Nonmedical source means a source of evidence who is not a medical source. This includes . . . [f]amily members."). Plaintiff offers no statutory or case law to demonstrate otherwise. Accordingly, the ALJ did not commit error with his respect to the discussion of these two statements.

However, even if the ALJ was required to examine the persuasiveness of these nonmedical sources, he explicitly stated that the two statements were consistent with one another, discussed each in detail, and considered them in combination with over evidence in the record. (AR 32.) For example, the sister's statement, along with Dr. Neal's neuropsychological assessment, "greatly influenced" the ALJ's assessment of Plaintiff's RFC, and convinced him that, despite Plaintiff's advanced education and past "gifted abilities to perform exceptionally well" as an administrative assistant, Plaintiff is nevertheless "unable to perform any similar skilled or even semi-skilled occupations due to the combined impact of her medically determinable limitations." (AR 34.) Thanks to those two pieces of evidence, the ALJ "afford[ed] greater limitations than the non-severe mental limitations posed by the state DDS review consultants." (*Id.*) Accordingly, the Court finds

that the ALJ adequately considered the statements when evaluating Plaintiff's own statements about her limitations.

In sum, to support his conclusion that Plaintiff's subjective complaints were not entirely consistent with the record, the ALJ relied on specific objective evidence, including medical evidence, Plaintiff's testimony regarding her symptoms and daily activities, and other evidence in the record from nonmedical sources. Given such support, as well as the significant deference that must be afforded the ALJ's credibility determination, the Court finds no reversible error. *See Hernandez*, 644 F. App'x at 476 ("[W]e affirm if the ALJ's determination is reasonable and supported by substantial evidence.") (internal citation and quotations omitted). This assertion of error is, therefore, rejected.

## V.    RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (Docket No. 14) be GRANTED and the Social Security Administration's decision be REVERSED, and this matter be REMANDED to the SSA for further administrative proceedings consistent with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004)

(en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge